**Affirmed as Modified and Opinion Filed August 8, 2024**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

_____

### No. 05-23-00277-CR
_____

### DILLION ALAN NEILL, Appellant
### V.
### THE STATE OF TEXAS, Appellee

**On Appeal from the 416th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause No. 416-82674-2022**

## MEMORANDUM OPINION

Before Justices Nowell, Miskel, and Kennedy
Opinion by Justice Miskel

Dillion Alan Neill appeals the trial court's amended judgment convicting him of online solicitation of a minor.[1] The jury found him guilty and assessed his punishment at ten years of imprisonment. Neill raises three issues on appeal, arguing that: (1) the evidence is insufficient to support his conviction; (2) he suffered egregious harm because the trial court failed to include the definition of "intent" in

---

[1] Neill's appeal initially included an additional issue in which he asserted that the trial court erred by failing to pronounce his sentence in his presence. This Court resolved this issue by ordering abatement of this appeal and oral pronouncement of Neill's sentence in his presence. The trial court carried out the oral pronouncement and amended the judgment to reflect this action. Because this issue has been resolved, we overrule this issue as moot. We construe this appeal as an appeal from the judgment as so amended.

the jury charge; and (3) the amended judgment should be modified because it incorrectly states that the victim was fifteen years old.

We conclude that the evidence is sufficient to support Neill's conviction. We further conclude that the trial court's failure to include the definition of intent in the jury charge did not egregiously harm Neill. We also conclude that the amended judgment contains an error and should be modified to state that the victim's age is not applicable. Accordingly, we affirm the amended judgment as modified.

## I.    Background

Collin County Sheriff's Deputy Lee McMillian worked in the division of the Collin County Sheriff's Office that investigated online crimes against children. As part of an undercover operation, he set up accounts online using the name "Peyton" and provided contact information.

On April 12, 2022, Neill began texting Peyton around 2:41 p.m. He asked her to meet him and described the sexual contact and intercourse that he wished to engage in with her. He also asked for a photograph. Peyton then told him that she was "almost 16" but that she wanted him to come over. Neill questioned her age and said she was trying to get him arrested. Peyton denied that. Neill asked if she knew of a place where "nobody would know or find us or find out." Peyton said that she was at her aunt's house alone all day until midnight. After he reiterated his request for photographs, McMillian sent him a series of photographs depicting a

young girl in her mid-teens. Neill responded, "You look older." Peyton texted back, "I'm not lol."

Neill then began asking about her past sexual experiences, whether she was a virgin, whether she had experienced digital penetration, anal sex, or oral sex. Peyton replied that she had only done touching over clothes with boys but had gone further with a female friend. Neill then asked if this friend would like to join them. Peyton asked Neill what he would do with both of them, and Neill talked about watching the two of them, after which they would "share" him sexually. Peyton texted that her friend was also 15 years old. Neill texted, "I just seriously don't want to get into any trouble so idk if I should do anything." He then told Peyton to ask if her friend "would want to share a dick to suck and both take turns taking it inside you plus play and eat and finger each other and whatever else." McMillian sent a photo depicting two young women posing as Peyton and her friend. Peyton texted Neill for a response, messaging "so what u wanna do" and, twenty-six minutes later, "you there?"

At this point, Neill expressed concerns that Peyton might be a police officer, or that she might be setting him up. Peyton sent him another photo of the same young woman holding a sign with Neill's name on it. But after Peyton assured him otherwise and told him that she and her friend keep good secrets, he returned to asking whether she and her 15-year old friend were virgins. He then asked Peyton to invite her friend, but only if Peyton was certain that her friend could "keep a

secret." When Peyton texted that her friend was "okay with it," he asked her to invite her friend so that the friend and Peyton could meet him for sex that evening. Peyton told Neill she and her friend could be at the park in 25 minutes.

Neill asked for a video chat to ensure that Peyton and her friend were not police officers or involved in a setup. Peyton offered to call him but said she was not taking her clothes off on the phone. Neill questioned why Peyton was "so eager for this to happen and putting it to [sic] so badly." Peyton texted the park address to Neill. About an hour later, Peyton texted a photo of herself at a park. Neill did not meet her at the park.

About two hours later, Neill texted Peyton again and asked if she still wanted to meet. She said that it would have to be the next day because her aunt was coming back home. He told her to "sneak out" and then described several explicit sexual acts he would perform on her. Peyton responded, "tomorrow." Neill replied that he had to work the next day but requested more photos.

Peyton reached out to Neill the next day and asked if he was going to see her later. Later that night, he texted that he was done with work and "headed [her] way," but Peyton did not respond until the next morning. Neill and Peyton briefly texted back and forth over the next two days. Neill then contacted her again eight days later and asked if she and her friend still wanted to have sex with him, but he also demanded proof that she was not law enforcement and that he would not end up in jail. McMillian had a female undercover officer call Neill and pretend to be Peyton,

and they talked for nine minutes. After the call, when Peyton refused to have phone sex first, Neill again expressed concern that her reluctance to do anything other than in person was the reason he believed that it was a set up waiting to happen.

Over the next few days, Neill again asked if Peyton would engage in phone sex with him. When she refused, he stated that her refusal made him suspect she was setting him up. She stated that she did not want to do phone sex because the boys at her school always want to do that. Neill also repeatedly stated that he wanted to have sex with her, but he did not want to go to prison. He asked one more time: "Please can I see your pussy and you naked[.]" "It would pretty much guarantee me to come meet you if you do[.]" The texts then stopped.

McMillian obtained an arrest warrant. He and Collin County Sheriff's Investigator Travis Monk arrested Neill on May 3, 2022 at his apartment in Fort Worth and seized his cell phone. In his apartment, police found containers with 3.28 grams of methamphetamine. They found texts on his cell phone suggesting that he had been trying to purchase a firearm sometime around May 2, 2022, but they found no evidence that he had purchased one. At the time of his arrest, Neill had been on deferred adjudication probation for about a month for possession of methamphetamine. Monk obtained a search warrant for the phone eight months later. A Wylie police detective extracted the data from the phone, which confirmed that Neill's phone had sent and received the texts with Peyton and had received the phone call.

Neill pleaded not guilty to online solicitation of a minor, a second degree felony. A jury found him guilty and assessed his punishment at ten years of imprisonment. This appeal followed.

## II.     Evidence is Sufficient

In his first issue, Neill argues that the evidence is insufficient to support his conviction for online solicitation of a minor because it does not prove (1) that Deputy Lee McMillian[2] is a minor, (2) that Neill knowingly solicited McMillian to meet, or (3) that Neill specifically intended to engage in sexual activity with McMillian (posing as Peyton).

## A.     Standard of Review

Under the Due Process Clause, a criminal conviction must be based on legally sufficient evidence. *Harrell v. State*, 620 S.W.3d 910, 913 (Tex. Crim. App. 2021). To analyze the sufficiency of the evidence, a reviewing court must determine "the essential elements of the crime" for which the State must provide sufficient evidence to support a conviction. *Dunham v. State*, 666 S.W.3d 477, 482 (Tex. Crim. App. 2023). To identify these essential elements, appellate courts examine the hypothetically correct jury charge for the case, which sets out the statutory elements of the offense as modified by the charging instrument. *Id.*

---

[2] Neill refers to "McMillian" rather than Peyton even when indicating the purported minor; however, we generally will refer to "Peyton" because she is the online persona used by McMillian in this case.

Courts perform a sufficiency review by examining all of the evidence in the record in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* The jury is the sole judge of the credibility and weight to be attached to the testimony of witnesses. *Id.* When the record supports conflicting inferences, reviewing courts presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination. *Id.* Each fact need not point directly and independently to the defendant's guilt as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Id.*

Direct evidence and circumstantial evidence are treated equally, and circumstantial evidence alone can be sufficient to establish guilt. *Id.* A jury may infer intent from circumstantial evidence such as the acts, words, and conduct of the defendant. *Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2004). Evidence may be legally insufficient when the record contains either no evidence of an essential element, merely a modicum of evidence of one element, or if it conclusively establishes a reasonable doubt. *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017).

**B.      Essential Elements of Online Solicitation of a Minor**

The Texas Penal Code provides that a person commits online solicitation of a minor if:

> the person, over the Internet, by electronic mail or text message or other electronic message service or system, or through a commercial online

service, knowingly solicits a minor to meet another person, including the actor, with the intent that the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse with the actor or another person.

TEX. PENAL CODE § 33.021(c). A "minor" includes an individual whom the actor *believes* to be younger than 17 years of age. *Id.* § 33.021(a)(1)(B) (emphasis added). It is not a defense to prosecution under Subsection (c) that the meeting did not occur. *Id.* § 33.021(d); *see also Tuazon v. State*, 661 S.W.3d 178, 183 (Tex. App.—Dallas 2023, no pet.) (stating that the pertinent inquiry is whether the defendant solicited the victim online and whether, at the time he did so, he intended that the victim engage in sexual contact, sexual intercourse, or deviate sexual intercourse).

A person acts knowingly with respect to the nature of his conduct or to circumstances surrounding his conduct when he is aware of the nature of his conduct or that the circumstances exist. *See* PENAL § 6.03(b). The offense is complete at the time of the internet solicitation rather than at the time of any later meeting. *See Tuazon*, 661 S.W.3d at 183 (citing *Ex parte Lo*, 424 S.W.3d 10, 23 (Tex. Crim. App. 2013) (orig. proceeding)).

A person acts with intent when it is his conscious objective or desire to engage in the conduct or cause the result. *See* PENAL § 6.03(a). Direct evidence of intent is not required—intent may be inferred from circumstantial evidence such as acts, words, and the defendant's conduct. *See Hart v. State*, 89 S.W.3d 61, 64 (Tex. Crim. App. 2002). The offense is completed at the time of the solicitation, and the requisite intent arises within the conduct of soliciting. *See McLeod v. State*, No. 14-22-00684-

–8–

CR, 2023 WL 8263659, at *7 (Tex. App.—Houston [14th Dist.] Nov. 30, 2023, pet. ref'd) (citing *Ex parte Lo*, 424 S.W.3d at 22-23 and PENAL § 33.021(c)).

**C.      Evidence is Sufficient to Support Conviction**

Neill's indictment alleges that Neill solicited "Lee McMillian, a minor" in this offense.  Neill specifically disputes that sufficient evidence exists to show (1) that McMillian is a "minor," (2) that Neill knowingly solicited "a minor, Lee McMillian" to meet Neill, and (3) that Neill had the intent that the "minor" would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with Neill.

**1.      The evidence is sufficient to show that McMillian, who was posing as "Peyton," met the statutory definition of minor.**

In the first part of issue one, Neill argues the evidence is insufficient to prove both "that Lee McMillian is a minor" and that he believed McMillian was younger than 17 years old.  He contends that McMillian, not "Peyton," was the alleged minor in this case and that McMillian's testimony shows he had been a peace officer in Texas since 2016 and thus was older than 17 years of age.

A minor is defined as either (A) an individual who is younger than 17 years of age, or (B) an individual whom the actor believes to be younger than 17 years of age.  PENAL § 33.021(a)(1).  Courts have noted that the statute is meant to permit police officers to pose as minors to intercept sexual predators before they physically appear at a meeting place to engage in sexual activity with a child.  *See Ex parte Lo*, 424 S.W.3d at 17 (citing House Comm. on Criminal Jurisprudence, Bill Analysis, Tex. H.B. 2228, 79th Leg., R.S. (2005)); *see also McLeod*, 2023 WL 8263659, at

*7; *Ex parte Moy*, 523 S.W.3d 830, 837 (Tex. App.—Houston [14th Dist.] 2017, pet. ref'd). It is undisputed that Officer McMillian is older than 17 years of age. However, under subsection (B) of the statute, the State had to prove only that Neill *believed* McMillian, who was posing as a minor in an online undercover operation, was younger than 17 years of age.

Next, Neil argues that the State did not produce direct evidence that he believed McMillian's claim that he was 15 years old. However, at trial the State produced the following evidence:

- After Peyton told Neill she was "almost 16," he asked "[y]ou have somewhere nobody would know or find us or find out?"

- After Peyton told Neill that her friend was 15 years old, Neill asked Peyton to ask her friend to join them for sex, but only if Peyton knew "for a absolute fact that she can also keep a secret."

- McMillian sent several photos of Peyton as a young girl in her mid-teens;

- Peyton made references to being in school;

- Neill inquired about her sexual experience and asked if she and her friend were virgins;

- Neill later asked Peyton to "[j]ust sneak out."

Neill's texts showed that he was concerned about secrecy and being reported to the police, which a rational juror could view as evidence of his belief that he was engaging in criminal behavior with a minor.

In addition, the jury was free to disregard defendant's self-serving statements that Peyton looked older than 15 or that he was worried that she may be a police

–10–

officer or turn him in. *See Perales v. State*, 622 S.W.3d 575, 582 (Tex. App.—Houston [14th Dist.] 2021, pet. ref'd). A challenge to the sufficiency of the evidence on the basis that these statements demonstrate a conflict of evidence is an attack on the credibility and weight assigned to the evidence by the jury. We are required to defer to the jury's credibility and weight determinations. *See Dunham,* 666 S.W.3d at 482.

After reviewing the evidence, we conclude that a rational jury could have found that Neill believed McMillian, posing as Peyton, was under 17 years of age. *See Perales*, 622 S.W.3d at 580–82 (concluding evidence of defendant's belief that police officer posing as 16-year-old girl was sufficient when defendant received photos of the officer as a 14 and 16-year old girl, repeatedly asked her if he was speaking with police, offered to pick her up from school and asked her to skip school, and discussed how to get together without her mother finding out); *Beal v. State*, No. 11-22-00269-CR, 2024 WL 2335893, at *3 (Tex. App.—Eastland May 23, 2024, no pet h.) (mem. op., not designated for publication) (determining that a rational jury could logically infer that the defendant knew he was soliciting a minor when the messages showed that he lied about his age to make himself younger and when the purported minor told him her age, detailed her sexual inexperience, stated she would have to sneak out, and disclosed that her mother monitored her phone). Accordingly, we conclude the evidence is sufficient to support Neill's conviction. We overrule the first part of issue one.

**2. The evidence was sufficient to show that Neill knowingly solicited Peyton to meet.**

In the second part of issue one, Neill argues that the evidence is insufficient to prove he knowingly solicited McMillian to meet. He asserts that the State must prove that Neill was aware that he was urgently pleading with McMillian to meet him at a particular time and place. He argues that he never requested or urgently pleaded for Peyton to meet him at a particular time and place, that Peyton offered to meet him at the park but that he did not initiate the offer, and that Neill declined to meet her at the park because she would not video chat with him. He contends that, even though he later texted Peyton, "still want to meet[?]," they never settled on a time and place.

Despite Neill's choice of specific dictionary definitions for the words "solicit" and "meet," he cites no authority supporting his argument that the statute requires urgent pleading by the perpetrator to meet at a specific time and place in order to commit the offense. "Meet" and "solicit" are not defined in the statute. *See* PENAL §§ 33.01, 33.021. When analyzing sufficiency of the evidence, undefined statutory terms "are to be understood as ordinary usage allows, and jurors may thus freely read statutory language to have any meaning which is acceptable in common parlance." *Dunham*, 666 S.W.3d at 484 (quoting *Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App.1992)).

When determining the fair, objective meaning of an undefined statutory term, the reviewing court may consult standard dictionaries. *Id*. One standard dictionary

–12–

defines "meet" in this context to mean "to come into the presence of for the first time: to be introduced to or become acquainted with," "to come together with especially at a particular time and place," and "to come into contact or conjunction with: join." Meet, Merriam-Webster.com, http://merriam-webster.com/dictionary/meet (last visited July 26, 2024). The word "solicit" means "to make petition to: entreat," "to approach with a request or plea," "to urge (something, such as one's cause) strongly," "to entice or lure especially into evil," "to proposition someone especially as or in the character of a prostitute," and "to try to obtain by usually urgent requests or pleas." Solicit, Merriam-Webster.com, http://merriam-webster.com/dictionary/solicit (last visited July 26, 2024). The jury charge did not define "solicit," and appellant does not identify any source showing that common parlance requires that a solicitation be urgent or that a meeting can only occur at a specific time expressly agreed in advance.

The record shows that Neill solicited Peyton to meet after she stated that she was only 15 years old and that he wanted to keep their meeting secret after learning her age. Peyton suggested the original meeting place at the park, which she said was walking distance from her aunt's house, and sent Neill the address. Evidence of a knowing solicitation to meet does not require that the initial location suggestion be the defendant's idea. *See Tuazon*, 661 S.W.3d at 184 (determining that evidence of defendant's intent to meet was sufficient regardless of whether it was minor's initial idea to meet when other messages demonstrated his intent). Although Neill did not

–13–

meet Peyton at the first proposed meeting at the park, Peyton remained interested in meeting and Neill continued with his online texting. At one point, he stated, "was on my way was wanting to put my dick inside you," and the following day texted, "Hey I'm headed your way if I can come over I can [sic] already headed that direction."

Neill's other messages provide additional evidence of his solicitation to meet Peyton, stating:

- You have somewhere nobody would know or find us or find out?

- I was asking If you are a virgin and she is a virgin and to go ahead and ask you know she won't tell anybody if she wants to meet you and y'all do anything and everything sexually to each other as well as share me

- "Still want to meet" followed by "?????"

- Just sneak out and I will . . . .

The evidence only needs to show that Neill asked a minor to meet him to engage in sexual contact, sexual intercourse, or deviate sexual intercourse—neither a sense of urgency nor a specific time and place is necessarily required. *See Ex Parte Victorick*, 453 S.W.3d 5, 15 (Tex. App.—Beaumont 2014) (pet. ref'd) (concluding that the jury, using the ordinary understanding of the word "meet," could find that defendant solicited minor to meet him where they were allegedly in the same building when the texts were sent). Moreover, Neill already had the address for the park near the house where Peyton's aunt resided, and Peyton could walk to the

location when available.  We conclude that a reasonable jury could have found that Neill knowingly solicited Peyton to meet.  We overrule the second part of issue one.

**3.    The evidence was sufficient to prove that Neil intended to solicit Peyton to engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him.**

In the third part of issue one, Neill argues the evidence is insufficient to show that he intended to engage in sexual activity with McMillian (posing as Peyton) at the time he sent the messages. The State must prove that Neill had the "requisite intent at the time of the solicitation." *See Tuazon*, 661 S.W.3d at 184.  Although Neill concedes that he sent multiple sexually explicit messages and described multiple sex acts in those messages, he argues that the evidence does not show he had the requisite intent because he did not do so while soliciting Peyton to meet him at a particular time and place.  We have already rejected the argument that a specific time and place must necessarily be specified in the message on the facts in this case.  We consider only whether a rational jury could have found from the evidence that Neill intended to engage in sexual behavior with Peyton at the time of his solicitation of her.

In texts made after he learned that Peyton had a friend, Neill messaged, "I can finger one while I eat or even have my dick in the other" and "But question would be if she would want to share a dick to suck and both take turns taking it inside you plus play and eat and finger each other and whatever else."  About 45 minutes later, he made the following solicitation:

–15–

> I was asking if you are a virgin and if she is a virgin and to go ahead and ask you know she won't tell anybody if she wants to meet you and y'all both meet me tonight and y'all do anything and everything sexually to each other as well as share me.

This request indicates his intent to meet Peyton for sexual acts and his proposal that they meet that evening. Further, when Peyton indicated that her friend was going to join them, Neill further clarified his intent to have sexual intercourse at the meeting being discussed by stating, "And she's okay with sex like y'all are both going to let me inside you right?"

After the first meeting failed to occur, Neill texted Peyton again later that night asking if she still wanted to meet. When she said they would have to wait until the next day, he responded:

> Just sneak out and I will lick all over your pussy slowly put a finger in you while you have my dick in your mouth sucking it moving your tongue up and down until I have you soaking wet then as I pulled my finger out of you I'll pull my dick out of your mouth and I'll put it up for your clit rub your wet little pussy with the head of my dick and I'll slowly start to press it against you till it's slots inside until you're taking every inch.

This also demonstrates both his request to meet ("just sneak out") and his sexual intent.

After reviewing the evidence, we conclude that a rational jury could have found Neill intended that Peyton would engage in sexual contact, sexual intercourse, or deviate sexual intercourse with him or another person. We overrule the third part of issue one.

**D.      Conclusion—Sufficiency of the Evidence**

We conclude that a rational jury could have found that Neill committed the offence beyond a reasonable doubt.  Accordingly, we conclude the evidence is sufficient to support Neill's conviction for online solicitation of a minor.  Issue one is overruled.

**III.    Jury Charge Error Did Not Cause Egregious Harm to Neill**

In his second issue, Neill argues that he suffered egregious harm because the trial court failed to include the definition of "intent" in the jury charge.  The State agrees that the omission was erroneous but disputes that the error caused Neill egregious harm.  As a result, we will analyze only whether Neill suffered egregious harm.

**A. Standard of Review**

All alleged jury-charge error must be considered on appellate review regardless of whether it was preserved in the trial court.  *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012).  A review of alleged jury-charge error involves two steps:   First, the reviewing court must determine whether the charge is erroneous.  *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).  If it is, then the court must decide whether the appellant was harmed by the erroneous charge.  *Id.*

There are two standards of review for jury-charge-error claims.  *Id.* (citing *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)).  If a

–17–

defendant timely objects to alleged jury-charge error, the record need only show "some harm" to obtain relief. *Id.* If there was not a timely objection, the record must show "egregious harm." *Id.* Harm is assessed in light of (1) the entire jury charge, (2) the state of the evidence, including the contested issues and weight of the probative evidence, (3) the argument of counsel, and (4) any other relevant information revealed by the record of the trial as a whole. *Id.* (citing *Almanza*, 686 S.W.2d at 171).

An erroneous jury charge is egregiously harmful if it affects the very basis of the case, deprives the accused of a valuable right, or vitally affects a defensive theory. *Id.* A finding of egregious harm must be based on actual harm rather than theoretical harm. *Id.* Egregious harm is a difficult standard to meet, and the analysis is a fact-specific one. *Id.* Neither party bears the burden to show harm. *Id.*

## B. The omission of the definition of intent in the jury charge did not egregiously harm Neill.

Because Neill did not object to the omission of an intent definition in the jury charge, we review the record for egregious harm. *See id.*

### 1. Entire Jury Charge

The first factor involves analyzing the entire jury charge to determine whether it accurately informed the jury that, to find Neill guilty, he must have solicited Peyton with the intent that she would engage in sexual conduct with Neill. When a statutory definition is not included in the charge, it is assumed the jury would use the term's commonly understood meaning in its deliberations. *Olveda v. State*, 650

–18–

S.W.2d 408, 409 (Tex.Crim.App.1983); *Messner v. State*, No. 05-07-00273-CR, 2007 WL 4216148, at *5 (Tex. App.—Dallas Nov. 30, 2007, pet ref'd) (not designated for publication).

Acknowledging case law holding that the statutory and common definitions of intent are not substantially different, Neill concedes that the entire-jury-charge factor would weigh against a finding of egregious harm. *See Nel v. State*, No. 08-17-00075-CR, 2019 WL 257882, at *4 (Tex. App.—El Paso Jan. 18, 2019, no pet.) (not designated for publication). In this case, the jury charge defined the offense of online solicitation of a minor, stating that a person commits the offense if he knowingly solicits a minor to meet "with the intent the minor will engage in sexual contact, sexual intercourse, or deviate sexual intercourse" with the actor or another person. The jury charge's application section also required the jury to make this intent finding with respect to Neill's actions. Accordingly, we conclude that the first factor weighs against a determination of egregious harm.

## 2.    State of the Evidence

Second, we consider whether the state of the evidence regarding Neill's intent to engage in the sexual behavior weighs in favor of an egregious-harm finding. Neill argues that the evidence of his intent is contradictory. He contends that the evidence does not show that he followed through with his communications by actually meeting with Peyton and that this is circumstantial evidence of his lack of intent. However, the record contains evidence that:

- After the park meeting did not take place and Peyton purportedly returned to her aunt's house, Neill messaged that he "was on my way was wanting to put my dick inside you."

- After Peyton told him they would have to meet the next day, Neill told her to "[j]ust sneak out."

- The next day, Neill messaged Peyton, "Hey I'm headed your way if I can come over I can [sic] already headed that direction."

- Another time, Neill texted, "I'm just not trying to go to prison but definitely want to fuck you."

These statements, in addition to the other evidence in the record such as Neill's explicit text messages about the sexual conduct he wanted to engage in with Peyton and her friend, are evidence of Neill's intent to engage in sexual behavior.

Neill also argues that his concern relating to the possibility that Peyton was a police officer or that he was being set up also indicates his lack of intent. After expressing concern, however, the record shows that he continued to solicit Peyton. The offense is complete at the time of the internet solicitation. *See Tuazon*, 661 S.W.3d at 183.

Neill's messages thus provided adequate evidence of his intent to engage in sexual behavior with Peyton. We conclude the state of the evidence made it less likely that the jury charge caused Neill actual harm. Accordingly, this factor weighs against finding egregious harm.

### 3. Arguments of Counsel

Next, we consider whether any arguments made by the State or Neill exacerbated or ameliorated the error in the charge. Neill argues that his attorney

–20–

focused on (1) whether there was an agreement to meet, and (2) whether Neill intended to engage in sexual conduct with Peyton. With respect to intent, defense counsel argued that the officers manufactured an environment for crime to inflame the jury. However, defense counsel's closing argument did not focus significantly on Neill's intent. The State, during its closing, re-read some of the texts to the jury and recited evidence to show that the elements of the crime had been proved, stating that Neill was "trying to meet up to have sex." Both parties referred, directly or indirectly, to Neill's intent in their arguments; however, a rational jury could have understood these arguments based on a common sense meaning of intent even if undefined. We conclude that the lack of a definition of intent did not cause significant harm to Neill. Accordingly, this factor weighs against finding egregious harm.

### 4. Other Relevant Information

Finally, we consider any other relevant information. Neill argues that other relevant information was harmful to Neill. He cites the following interactions between the State and venire members during voir dire that focused on intent without discussing its meaning:

- Venireperson explained that a person may have the "intent of having it with a child" even where there is only an adult posing as a child;

- Prosecutor discussed ways she might prove intent;

- One venireperson said she would convict if there was evidence of intent;

- A venireperson stated that he thought "intent" applied to "having that conversation or solicit[ing] that sexual act []; and

- Another venireperson stated that Neill would not be in court if he "actually has no intent of doing anything."

Neill argues that these interactions demonstrate that the jurors failed to understand the meaning of intent and that no one defined it for them. We discern nothing in the record indicating that the jury failed to understand the definition of intent. We conclude that this factor weighs against a finding of egregious harm.

## C.     Conclusion—Harm Analysis

Weighing these *Almanza* factors, we conclude that the omission of the definition of intent from the jury charge did not vitally affect a defensive theory that Neil did not have the requisite intent and did not cause egregious harm to Neill. We overrule his second issue.

## IV.     Amended Judgment Should Be Reformed to Indicate that Victim's Age is "N/A"

The amended judgment in this case indicates that the age of the victim was 15 years of age. Neill argues that this Court should reform the judgment to reflect that the age of the victim was over 18 years of age or otherwise direct the trial court to make a finding as to McMillian's age at the time of the offense. The State agrees that the judgment should be modified but argues that the age of the victim should be noted as "N/A" because there is no victim in this case.

Texas law requires that a judgment contain a "statement of the age of the victim of the offense" for reportable convictions requiring sex-offender registration.

–22–

*See* TEX. CODE CRIM. PROC. ANN. art 42.01, §1(27).    Online solicitation is a reportable conviction.  *Id.* art 62.001(5)(J).  Words not defined in a statute are used in their ordinary and common sense.  *Avery v. State*, 359 S.W.3d 230, 237 (Tex. Crim. App. 2012).   Victim is defined as "(1) one that is acted on and usually adversely affected by a force or agent, such as (a) (1) one that is injured, destroyed, or sacrificed . . . , (2) one that is subject to oppression, hardship or mistreatment, (b) one that is tricked or duped."   Victim, Merriam-Webster.com, http://merriam-webster.com/dictionary/victim (last visited July 22, 2024).

In this case, McMillian satisfied the statutory definition of "minor" because the jury found that he was an individual whom Neill believed to be fifteen years old. *See* PENAL § 33.021(a)(1)(B).  Because there was no actual minor "victim" in this case who was harmed by Neill's conduct under the ordinary and common sense meaning of the word, we determine that the requirement to state the age of the victim under article 42.01 does not apply.  *See* CRIM. PROC. art 42.01.

This Court has the power to modify a judgment to speak the truth when it has the necessary information to do so. *See* TEX. R. APP. P. 43.2(b); *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (adopting the reasoning in *Asberry v. State*, 813 S.W.2d 526, 529–30 (Tex. App.—Dallas 1991, pet. ref'd) (en banc)). Accordingly, we reform the amended judgment to substitute "N/A" for "15" in the statement of the victim's age at the time of the offense.

## V.    Conclusion

We conclude that the evidence was sufficient to support Neill's conviction and that the omission of the intent definition from the jury charge did not cause egregious harm to Neill. We further conclude that the trial court's amended judgment is modified to substitute "N/A" for "15" as the age of the victim at the time of the offense.

As modified, we affirm the trial court's amended judgment.

The trial court is directed to prepare a reformed judgment that reflects the modifications made in this Court's opinion and judgment in this case. *See Shumate v State*, 649 S.W.3d 240, 244–45 (Tex. App.—Dallas 2021, no pet.).


/Emily A. Miskel/
EMILY A. MISKEL
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2
230277F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DILLION ALAN NEILL, Appellant

No. 05-23-00277-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 416th Judicial District Court, Collin County, Texas
Trial Court Cause No. 416-82674-2022.
Opinion delivered by Justice Miskel. Justices Nowell and Kennedy participating.

Based on the Court's opinion of this date, the amended judgment of the trial court is **MODIFIED** as follows:

Substitute "N/A" for "15" as the age of the victim at the time of the offense.

As **REFORMED**, the amended judgment is **AFFIRMED**.

Judgment entered this 8th day of August 2024.